UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LARRY PORTER,

|                                    |                      |                  |
|                                    | Plaintiff,           | **DECISION**     |
|                                    |                      | **and**          |
| v.                                 |                      | **ORDER**        |

GLEN S. GOORD,                                              **04-CV-0485F**
DONALD SELSKY,
JOHN DOE, I-G,                                              **(consent)**
MICHAEL P. McGINNIS,
BARRY CAPELL,
JAMES P. WAITE,
ROCKY L. HAZELTON,
RICHARD MORIARTY,
MARK SHUMAKER,
JULIA HEYWARD,
KAREN DYAL,
PAUL WEED,
CHARLE WORLE,
RICHARD AUGUSTINE, and
JAMES CASSELBERRY,

                                         Defendants.

_____

APPEARANCES:            LARRY PORTER, *Pro Se*
                        88A4542
                        Upstate Correctional Facility
                        P.O. Box 2001
                        Malone, New York 12953

                        ANDREW M. CUOMO
                        Attorney General, State of New York
                        Attorney for Defendants
                        DAVID J. STATE
                        Assistant Attorney General, of Counsel
                        Main Place Tower
                        Suite 300A
                        350 Main Street
                        Buffalo, New York 14202

**JURISDICTION**

On March 20, 2008, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. The matter is presently before the court on Defendants' motion for summary judgment (Doc. No. 148), filed August 5, 2008.

**BACKGROUND**

Plaintiff Larry Porter ("Plaintiff" or "Porter"), proceeding *pro se*, commenced this civil rights action on June 30, 2004, while incarcerated at Southport Correctional Facility ("Southport" or "the correctional facility"), in Pine City, New York, alleging Defendants violated Plaintiff's Fourteenth Amendment due process rights in connection with a Tier III Superintendent's Hearing ("the disciplinary hearing") held on July 18, 2002, relative to a July 5, 2002 altercation in which Plaintiff and several correctional officers were injured and required medical treatment. In a Memorandum and Order filed October 5, 2004 (Doc. No. 4) ("October 5, 2004 Order), District Judge John T. Elfvin dismissed for failure to state a claim all claims with prejudice,[1] with the exception of the Fourteenth Amendment procedural due process claims which were dismissed without prejudice and with leave to replead by November 5, 2004. October 5, 2004 Order at 7.

On October 26, 2004, Plaintiff filed an amended complaint, in accordance with the October 5, 2004 Order, (Doc. No. 5) ("Amended Complaint"), alleging Defendants violated his First, Eighth and Fourteenth Amendment due process rights in connection

---

[1] Judge Elfvin specifically dismissed with prejudice for failure to state a procedural due process claim Plaintiff's claims that Defendants engaged in a conspiracy to deprive Plaintiff of his due process rights by (1) failing to conduct an investigation or to pursue a criminal complaint against the correctional officers involved in the assault: (2) failing to provide truthful information in relation to certain documents including the misbehavior report and medical records of Plaintiff's treatment following the altercation and relied upon in the disciplinary hearing decision; and (3) testifying falsely at the disciplinary hearing. October 5, 2004 Order at 5-6.

with the July 5, 2002 assault and subsequent misbehavior report, disciplinary hearing and medical treatment.  Plaintiff specifically alleges Defendants retaliated against Plaintiff for complaining about alleged excessive force in violation of the First Amendment, used excessive force, failed to protect and denied Plaintiff medical treatment in violation of the Eighth Amendment; and denied Plaintiff procedural due process in violation of the Fourteenth Amendment.

Defendants to this action are current and former New York Department of Correctional Services ("DOCS") employees, including DOCS Commissioner Glenn S. Goord ("Goord"), Special Housing Unit ("SHU") Director Donald Selsky ("Selsky"), investigator John Doe (I.G.") ("the Doe Defendant"), Southport Superintendent Michael P. McGinnis ("McGinnis"), Southport Plant Superintendent Barry Capell ("Capell"), Captain James P. Waite ("Waite"), Lieutenant Rocky L. Hazelton ("Hazelton"), Sergeant Richard Moriarty ("Moriarty"), Sergeant Mark S. Shumaker ("Shumaker"), Counselor Julia Heyward ("Heyward"), Registered Nurse Karen Dyal ("Nurse Dyal"), Corrections Officer ("C.O.") Paul Weed ("Weed"), C.O. Charle Worle ("Worle"), C.O. Richard Augustine ("Augustine"), and C.O. James Casselberry ("Casselberry").  Answers to the Amended Complaint were filed on October 7, 2005 (Doc. No. 17), for Defendants Shumaker, Heyward, Casselberry, Goord, Selsky, McGinnis, Capell, Waite, and Hazelton), on October 13, 2005 (Doc. No. 18), for Defendant Worle, and on June 22, 2006 (Doc. No. 30), for Defendants Moriarty, Dyal, Weed, and Augustine.

On August 5, 2008, Defendants filed the instant motion for summary judgment (Doc. No. 148) ("Defendants' Motion"), supported by the Declaration of Glenn S. Goord (Doc. No. 149) ("Goord Declaration"), Statement of Undisputed Facts (Doc. No. 150)

("Defendants' Statement of Facts"), Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 151) ("Defendants' Memorandum"), and the Declaration of Assistant Attorney General David J. State in Support of Defendants' Motion for Summary Judgment (Doc. No. 152) ("State Declaration"), with attached exhibits A through E ("Defendants' Exh(s). __").  In opposition to summary judgment, Plaintiff filed on August 29, 2008, a Memorandum of Law (Doc. No. 155) ("Plaintiff's Memorandum"), the Affidavit of Larry Porter (Doc. No. 156) ("Porter Affidavit"), and a Statement of Undisputed Facts (Doc. No. 157) ("Plaintiff's Statement of Facts").  In further support of summary judgment, Defendants filed on October 9, 2008, a Reply Memorandum of Law In Further Support of Defendants' Motion for Summary Judgment (Doc. No. 158) ("Defendants' Reply Memorandum"), and the Reply Declaration of Assistant Attorney General David J. State in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 159) ("State Reply Declaration"), with an attached exhibit.  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion is GRANTED.


## **FACTS**[2]

On July 5, 2002, at 8:27 A.M., Plaintiff, then incarcerated at Southport, was in A Block, 5 Gallery, 21 Cell ("Plaintiff's cell"), at Southport, speaking with Defendant Correction Counselor Heyward, who was outside Plaintiff's cell.  As Heyward walked from Plaintiff's cell to the next cell, Plaintiff made an obscene remark and threw several objects at Heyward, including an apple, banana, and law book, striking Heyward with

---

[2] Taken from the pleadings and motion papers filed in this action.

the apple.  An Inmate Misbehavior Report ("the misbehavior report")[3] issued in connection with the incident charged Plaintiff with assault, verbal harassment and committing an unhygienic act.

Following the July 5, 2002 incident, at 9:35 A.M. that same day, Plaintiff was moved from Plaintiff's cell to a cell in a different block at Southport.  The cell move was conducted by Defendant Corrections Officers Augustine, Casselberry, Weed and Worle, and supervised by Defendant Sergeant Moriarty.  During the cell move, an altercation occurred in which Plaintiff and Defendants Augustine, Casselberry, Weed and Worle sustained injuries.  According to an Unusual Incident Report ("Unusual Incident Report"),[4] wrist restraints were applied to Plaintiff in preparation for escorting Plaintiff to his new cell.  Unusual Incident Report at 1. Plaintiff then backed out of his cell and head-butted Defendant Weed in the left eye.  *Id*.  Defendant Worle placed Plaintiff in a body hold and guided Plaintiff back into Plaintiff's cell where Plaintiff kicked Defendant Weed in the left knee, elbowed Worle in the forehead, kicked Casselberry in the groin. *Id*.  Defendants Weed and Augustine, "to gain control of violently struggling" Plaintiff, responded by striking Plaintiff with batons one time each on the right shoulder and left leg.  *Id*.  Defendants Weed and Casselberry then used body holds to place Plaintiff on the bed of the cell while Defendant Augustine applied a waist chain and leg irons, and escorted Plaintiff to B Block, B-1-5, without further incident.  *Id*.  Plaintiff denies being assaulted or hit after being placed in restraints.  Porter Deposition T.[5] at 31-32.

---

[3] Defendants' Exh. B.

[4] Attached to McGinnis' Answer to Plaintiff's Interrogatories (Doc. No. 104).

[5] Defendants' Exh. A.

Following the incident, Plaintiff and Defendants Augustine, Casselberry, Weed and Worle were examined by Defendant Nurse Dyal of the correctional facility's medical staff. Unusual Incident Report at 1-2. Augustine suffered left hand "blood exposure" that was "not significant." *Id*. Casselberry sustained abrasions to his right forearm and shin and lower abdomen pain; Weed had a swollen right cheek and eye and a left knee abrasion. *Id*. Worle sustained a bump and bruise to his right temple. *Id*. Plaintiff sustained a quarter-inch lower lip laceration, a one-inch abrasion in the back of his neck, and a dime-sized bump at the top of the head. *Id*. Both Defendants Weed and Worle were transported to an area hospital for treatment, and then returned to work. *Id*. All injuries sustained by Defendants were deemed "minor." *Id*. at 3-4.

According to a Use of Force Report completed in connection with the altercation, Nurse Dyal examined Plaintiff who complained only of a bump on his head. Use of Force Report at 1-2; Ambulatory Health Record.[6] Dyal reported Plaintiff has a "minor dime sized swollen on crown of head," a one-inch long "minor abrasion" on the back of his neck, and a one-quarter inch lower lip laceration for which no sutures were needed. *Id*. All injured areas on Plaintiff were cleaned, and Plaintiff was advised to keep the wounds clean and dry. *Id*. Plaintiff was not taken to the hospital for further treatment. Unusual Incident Report at 1-2.

In connection with the altercation, Plaintiff was charged with violating numerous correctional facility rules, including Rules 104.11 (violent conduct), 100.11 (assault on staff (two counts)), 107.11 (harassment), and 118.22 (committing an unhygienic act), for which the disciplinary hearing at issue was held on July 18, 2002. Based on the

---

[6] Copies of the Use of Force Report and Plaintiff's Ambulatory Health Record are attached to Dyle's Answer to Plaintiff's Interrogatories (Doc. No. 6).

Misbehavior Report, testimony of the disciplinary hearing witnesses, and the fact that except for pleading "not guilty" to each of the five charges, Plaintiff did not deny committing the violations of which he was accused, Defendant Hearing Officer Capell, on August 5, 2002, found Plaintiff guilty on all counts. Disciplinary Hearing T.[7] at Bates No. 1124. Because Plaintiff had already been sentenced to SHU for other violations, Capell sentenced Plaintiff to 21 days of restricted diet. *Id*.

## DISCUSSION

### 1.    Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*,

---

[7] Defendants' Exh. C.

51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion. *Coniglio v. Highwood Services, Inc.*, 495 F.2d 1286, 1292 (2d Cir.), *cert. denied*, 419 U.S. 1022 (1974). "The non-moving party may not rely on conclusory assertions or unsubstantiated speculation [to defeat summary judgment]." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, "the non-movant must produce specific facts indicating that a genuine factual issue exists." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (underlining added). The ultimate inquiry on a summary judgment motion is whether any reasonable jury could find the plaintiff's evidence meets the requisite burden of proof. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122-23 (2d Cir. 2004).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140). In the instant case, the Complaint alleges Defendants violated Plaintiff's under the First, Eighth and Fourteenth Amendments by

subjecting Plaintiff to excessive force, failing to intervene to protect Plaintiff from an assault, denying Plaintiff medical care, retaliating against Plaintiff by filing false misbehavior reports, and denying Plaintiff due process in connection with the use of force and the related disciplinary hearing.

Defendants argue in support of summary judgment that the Amended Complaint fails to state a claim for a Fourteenth Amendment procedural due process violation, Defendants' Memorandum at 4-5; ten of the 14 named Defendants were not personally involved in the claimed unlawful behavior, *id.* at 5-9; Plaintiff's claims of retaliation are not constitutionally cognizable, *id.* at 9-11; Plaintiff has failed to establish an Eighth Amendment excessive force claim, *id.* at 11-19; and Defendants are qualifiedly immune from liability on all of Plaintiff's claims, *id.* at 19-21. In opposition to summary judgment, Plaintiff takes issue with Defendants' responses to Plaintiff's interrogatories, especially Defendants' failure to admit or deny following specific DOCS Directives with regard to the July 5, 2002 incident and altercation and the subsequent disciplinary hearing, quotes large portions of the DOCS Directives Plaintiff maintains Defendants violated, and lists the Defendants who have, since the incident and altercation, worked within DOCS, used force against inmates, and been named in legal actions by other inmates. Plaintiff's Memorandum (*passim*). In further support of summary judgment, Defendants assert that in opposing summary judgment, Plaintiff fails to point to any genuine issue of material fact sufficient to avoid summary judgment. Defendants' Reply at 2-3.

**2.     Personal Involvement**

Three of the Defendants sued in the instant action are not alleged to have been

personally involved in the alleged constitutional deprivations, including Defendants DOCS Commissioner Goord, Southport Superintendent McGinnis, and SHU Director Selsky, but are sued in their supervisory capacity for failing to respond to Plaintiff's written requests to investigate or to pursue a criminal investigation into the alleged unlawful acts of the remaining Defendants. *See, e.g.*, Amended Complaint ¶ 4 (alleging Defendant Selsky failed to respond to Plaintiff's letter requesting an appeal of the Tier III disciplinary hearing), and ¶ 7 (alleging that despite Plaintiff's letters to Defendants, Goord and McGinnis failed to notify New York State Police about the July 5, 2002 altercation). The mere fact of supervisory authority, however, is insufficient to demonstrate liability, based on a failure to supervise, under § 1983. *Colon v. Coughlin,* 58 F. 3d 865, 874 (2d Cir. 1995). Personal involvement of the defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (holding to establish liability under § 1983, plaintiff must show defendant was personally involved in the alleged constitutional violation).

Personal liability of a supervisor may be shown by evidence that (1) the defendant participated directly in the alleged constitutional violation, (2) defendant, after being informed of the constitutional violation by report or appeal, failed to remedy the wrong, (3) defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuation of such custom or policy, (4) defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F. 3d at 873.

The mere receipt of a letter of complaint from an inmate, however, is insufficient to establish personal involvement and liability under § 1983. *Id*.; *see also Freeman v. Goord,* 2004 WL 2002927, at *5 (S.D.N.Y. Sep't. 8, 2004); *Gates v. Goord,* 2004 WL 1488405, at *9 (S.D.N.Y. July 1, 2004); *Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995). As such, Plaintiff's sending letters to Defendants Goord, McGinnis, and Selsky, requesting commencement of a criminal investigation against other alleged wrongdoers will not support holding Defendants Goord, McGinnis, and Selsky vicariously liable based on any supervisory authority over the remaining Defendants.

Accordingly, Defendants' motion is GRANTED with regard to all claims asserted against Defendants Goord, McGinnis, and Selsky.

### 3. Fourteenth Amendment Procedural Due Process

Plaintiff makes numerous claims that his Fourteenth Amendment procedural due process rights were violated in connection with the use of force in transferring Plaintiff to a new cell, the medical treatment rendered Plaintiff following the use of force, and the Tier III disciplinary hearing held with regard to the misbehavior report issued following the July 5, 2002 incident. Plaintiff essentially alleges that Defendants failed to proceed in accordance with certain DOCS Directives, including, for example, that Defendants failed to conduct an investigation into Defendants' alleged assault on Plaintiff in escorting Plaintiff to a new cell, Amended Complaint ¶¶ 2-4, 5, 7, failed to pursue criminal charges against the Defendant correctional officers involved in the assault, *id.* ¶¶ 5, 7, provided false information in the misbehavior, unusual incident and use of force

reports, *id.* ¶¶ 1, 4, 6, 7, gave false testimony at the disciplinary hearing and refused to call certain witnesses Plaintiff had requested to testify at the disciplinary hearing, *id.* ¶¶ 9. Plaintiff further maintains Defendants conspired to engage in such Fourteenth Amendment due process violations to conceal Defendants' involvement in the alleged unlawful assault and false misbehavior report, *id.* ¶¶ 6, 9, and to retaliate against Plaintiff, *id.* ¶¶ 5, 6, 7.

As stated, Plaintiff's Fourteenth Amendment procedural due process claims asserted in the original Complaint were dismissed by Judge Elfvin with prejudice as insufficient to state a procedural due process claim under *Sandin v. Connor*, 515 U.S. 472, 484 (1995). October 5, 2004 Order at 5-7. In particular, Judge Elfvin found that Plaintiff failed to allege that the conditions of his confinement subsequent to the alleged procedural due process violations resulted in an "atypical and significant hardship" as compared to the conditions of Plaintiff's confinement prior to the claimed constitutional violations. *Id*. at 5. Nevertheless, Judge Elfvin directed Plaintiff to file an amended complaint "factually alleg[ing] that he suffered a deprivation or punishment that was an 'atypical and significant hardship' in relation to the ordinary conditions of confinement and set[ting] forth what specific procedural rights he [Plaintiff] claims he was denied . . . ," or the action would be dismissed with prejudice. *Id*. (bracketed text added).

That Plaintiff's Amended Complaint, filed October 26, 2004, fails to allege procedural due process violations with the necessary specificity was observed by the undersigned on December 18, 2006. *See* December 18, 2006 Decision and Order (Doc. No. 48) at 3 ("Plaintiff's Amended Complaint demonstrates a nearly complete absence of the specifications directed by Judge Elfvin's order."). Indeed, the Amended

Complaint is devoid of any allegation that the alleged procedural due process violations have resulted in any change in Plaintiff's conditions of confinement as a result of the disciplinary hearing disposition, much less that such conditions are now an "atypical and significant hardship" when compared to Plaintiff's conditions of confinement prior to the alleged violations. As such, Plaintiff has failed to state a valid Fourteenth Amendment procedural due process claim and Defendants' request for summary judgment on such claim is GRANTED.

**4.     First Amendment Retaliation**

Plaintiff alleges that on July 5, 2002, Defendants, to retaliate against Plaintiff for throwing food items at and making an obscene statement to Heyward, assaulted Plaintiff and failed to have a video camera present to videotape Plaintiff's cell move and the assault. Amended Complaint ¶¶ 1, 6. Plaintiff further allege that Defendants, to retaliate against Plaintiff for complaining about Defendants' alleged assault and absence of video camera, subjected Plaintiff to false misbehavior reports and disciplinary action, and failing to pursue a criminal investigation into Defendants' alleged unlawful conduct. Amended Complaint ¶¶ 5, 6. Defendants, seeking summary judgment on the claim, assert that Plaintiff cannot establish the requisite causal connection between Defendants' alleged adverse action and Plaintiff's constitutionally protected conduct. Defendants' Memorandum at 10-11.

For a plaintiff to succeed in a First Amendment retaliation claim, he must show that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the

protected conduct and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Courts are properly skeptical of prisoner retaliation claims as "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes*, 239 F.3d at 493 (internal quotation marks and citations omitted). The instant record fails to establish a genuine issue of material fact supporting Plaintiff's retaliation claims.

Preliminarily, insofar as Plaintiff maintains Defendants assaulted him and failed to have a video camera present during the assault to retaliate against Plaintiff for throwing food items at and making an obscene remark to Heyward, Amended Complaint ¶ 6, such conduct by Plaintiff is not protected activity under the First Amendment. Plaintiff, who has the burden of demonstrating the existence of such a potential right, cites no authority to support his creative assertion, and the court's research reveals no case law supporting the proposition that conduct that is analogous to criminal behavior is constitutionally protected. *Cf. U.S. v. Gagliardi*, 506 F.3d 140, 148 (2d Cir. 2007) (observing the First Amendment does not protect conduct that is "the very vehicle" of

criminal activity).  As such, even assuming retaliation was the motivating factor for the adverse actions of Defendants against Plaintiff, because Plaintiff's conduct which precipitated Defendants' alleged retaliatory actions is not constitutionally protected, no retaliation claim lies.  *Gagliardi*, 506 F.3d at 148 (holding defendant's statements made in attempting to persuade minor victim to engage in criminal sexual conduct were not protected under First Amendment).  *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding public employee's statements made pursuant to official duties are not constitutionally protected and, as such, cannot support First Amendment retaliation claim).  *See also Camacho v. Brandon*, 317 F.3d 153, 162 (2d Cir. 2003) (holding plaintiff, former city council employee terminated in retaliation for votes cast by dissenting councilman for whom plaintiff had served as an aide, had third-party standing to assert First Amendment retaliation claim, but because dissenting councilman's affiliations did not constitute protected conduct, plaintiff had no First Amendment retaliation claim); and *Bumpus v. Canfield*, 495 F.Supp.2d 316, 327 (W.D.N.Y. 2007) (holding because inmate has no constitutional protection from cell searches, even a cell search conducted for retaliatory reasons cannot support a First Amendment retaliation claim).  Accordingly, there is no merit to this aspect of Plaintiff's First Amendment retaliation claim.

With regard to Plaintiff's claims that Defendants retaliated against Plaintiff for complaining about Defendants' failure to follow DOCS's procedures regarding the videotaping of the July 5, 2002 cell move and use of force by refusing to commence a criminal investigation into the matter, Plaintiff has no constitutionally cognizable right to insist on a criminal investigation against Defendants for their involvement in the alleged

civil rights violations. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding plaintiff mother lacked standing to maintain legal action seeking to require state officials prosecute father of plaintiff's child to obtain child-support order because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). As such, even assuming, *arguendo*, that Defendants failed to commence a criminal investigation into the alleged unlawful violations of Plaintiff's civil rights to retaliate against Plaintiff for complaining about Defendants' alleged unlawful actions on July 5, 2002, such failure does not constitute adverse action by Defendants and, as such, cannot support a First Amendment retaliation claim. *See Islam v. Goord*, 2006 WL 2819651, * 8 (S.D.N.Y. Sep't., 29, 2006) (dismissing for failure to state a First Amendment retaliation claim where defendants' conduct did not amount to adverse action). There is thus no merit to Plaintiff's retaliation claim insofar as the claim is based on Defendants' failure to pursue a criminal investigation into Defendants' alleged unlawful conduct.

Nevertheless, insofar as Plaintiff maintains Defendants retaliated against him for complaining about the July 5, 2002 altercation and requesting Defendants Goord, McGinnis, Selsky, Capell, Waite, and Hazelton pursue a criminal investigation against Defendants Heyward, Augustine, Casselberry, Weed, and Worle relative to the events of July 5, 2002, Amended Complaint ¶¶ 4-5, such request is protected under the First Amendment. *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing of prison grievances is a constitutionally protected activity"). *See Coleman v. Beale*, __ F.Supp.2d __, 2009 WL 1976044, * 4 (W.D.N.Y. July 8, 2009) (citing cases and observing inmate's filing of grievance as well as statements to prison official of inmate's

intention to file such grievance are "protected by First Amendment's guarantee of the rights to free speech and to petition the government for a redress of grievances."). With regard to Plaintiff's claims that he was subjected to false misbehavior reports, the filing of a false misbehavior report does not constitute "a *per se* constitutional violation actionable under § 1983" provided the inmate is afforded due process protection through a disciplinary hearing on the misbehavior report. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). "The key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections [to dispute a false or incorrect charge] guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added). Summary judgment on a retaliation claim based on the filing of a false misbehavior report, however, is improper where an inmate either is not granted a hearing on the alleged false disciplinary charges, or is granted a disciplinary hearing, but is unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him. *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995). As such, the filing of false misbehavior reports against Plaintiff cannot, by itself, support a retaliation claim based on Plaintiff's complaints about Defendants' failure to request a criminal investigation of Defendants' alleged unlawful conduct.

Although Plaintiff alleges Defendants presented false testimony and failed to call

witnesses to testify on Plaintiff's behalf at the July 18, 2002 disciplinary hearing, Amended Complaint ¶¶ 4-6, Plaintiff points to nothing in the record in support of such bare allegations. *Scotto*, 143 F.3d at 114 (non-moving party cannot defeat summary judgment by relying on "conclusory assertions or unsubstantiated speculation"). *Compare Jones*, 45 F.3d at 679 (vacating and remanding district court's decision that inmate plaintiff's claim of retaliatory filing of false misbehavior report was wholly conclusory as based solely on adverse disciplinary decision where plaintiff, although provided a hearing on the disputed disciplinary charges, "was unfairly denied the right to call key witnesses in defense of the charges against him," and, thus, had no opportunity to prove charges were false, as required before the district court could consider whether filing of false charges was intended to retaliate against the plaintiff).

A thorough review of the disciplinary hearing transcript establishes that Plaintiff was permitted to call witnesses, including Defendants Heyward, Schumaker, Augustine, Casselberry and Moriarty, who testified. Disciplinary Hearing T. at Bates No. 1061-67 (Heyward), 1074-80 (Schumaker), 1082-92 (Augustine), 1094-1105 (Casselberry), and 1114-21 (Moriarty). Although Plaintiff also requested Defendants Weed, Worle and Nurse Dyal, Disciplinary Hearing T. at Bates No. 1059, 1071, those Defendants were unavailable, and Capell stated that testimony from Weed and Worle would be redundant to the testimony given by Augustine, Casselberry and Moriarty. *Id*. at Bates No. 1122. Further, with regard to Nurse Dyal, who was not a witness to the July 5, 2002 incident or altercation, Capell stated Nurse Dyal's testimony would be redundant of Plaintiff's medical records which were submitted for the disciplinary hearing record, Plaintiff's injuries were not in dispute. *Id*. at Bates No. 1121-22. Significantly, Plaintiff neither

disputed that such testimony would be redundant, nor did Plaintiff request further adjourning the disciplinary hearing until such witnesses were available even though the record establishes that Plaintiff's other adjournment requests to allow Plaintiff to obtain documents relative to the hearing were granted. *See*, *e.g.*, Disciplinary Hearing T. at 1070 (adjourning disciplinary hearing to permit Plaintiff to obtain and review Use of Force Report information). Moreover, Plaintiff does not challenge the veracity of any specific portion of the testimony but, rather, challenged the charges against him as unsubstantiated by the facts and repeatedly protested Defendants' failure to videotape Plaintiff's July 5, 2002 cell move.

In particular, Plaintiff, who admitted he made an obscene remark to Heyward, and threw an apple, banana and law book at Heyward, striking Heyward with the apple, maintains he should have been charged with a sexual offense rather than with harassment. Disciplinary Hearing T. at Bates No. 1162-65. Plaintiff also denied throwing a cup of milk at Heyward, and that no photograph taken of the incident supports such charge, although Plaintiff admitted striking Heyward with an apple. *Id*. at 1165-67. That Plaintiff was not charged with an additional rule violation which may have been supported by the disciplinary hearing evidence, however, does not undermine that Plaintiff was provided with due process at the disciplinary hearing.

Insofar as Plaintiff questioned the witnesses regarding their understanding of the need to have a video camera present to videotape the cell move, Defendant Moriarty explained that because the cell move was considered a "routine move," it was not required to be videotaped. Disciplinary Hearing T. at 1116. Plaintiff did not dispute this explanation.

Moreover, Plaintiff fails to allege what disciplinary action was imposed as a result of the disciplinary hearing guilty disposition, or to explain how such disciplinary action caused Plaintiff to suffer an "atypical and significant hardship" as a result of such hearing, as required for a valid § 1983 due process claim.  *Sandin*, 515 U.S. at 484.

On this record, no reasonable jury could find that Defendants engaged in any adverse action against Plaintiff in connection with the disciplinary hearing.  Plaintiff has thus failed to establish the second element of a First Amendment retaliation claim with regard to the disciplinary hearing held in connection with the alleged false misbehavior report.

Summary judgment on Plaintiff's First Amendment retaliation claim is GRANTED.


**5.    Eighth Amendment**

It is fundamental that the Eighth Amendment protects prisoners from "cruel and unusual punishment."  U.S. Const. 8th Amend.  The Eighth Amendment "imposes duties on these [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 611 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  Prisoners' rights under the Eighth Amendment have been construed as including freedom from excessive force and denial of adequate medical care, *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003), and protection from violence sought to be inflicted by others, *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991).  Although different tests are used for evaluating Eighth Amendment claims for excessive force,

denial of medical care, and failure to protect claims, all Eighth Amendment claims are comprised of both an objective and subjective element, both of which must be established. *Trammell*, 338 F.3d at 161 (citing *Farmer*, 511 U.S. at 834).

### A.      Excessive Force

Plaintiff claims Defendants Augustine, Casselberry, Weed and Worle used excessive force against him during the July 5, 2002 cell move. Amended Complaint ¶¶ 2 and 6. In support of summary judgment, Defendants argue that the evidence in the record establishes only that Defendants' use of force was necessary to protect themselves from Plaintiff's violent conduct and to restore control over Plaintiff. Defendants' Memorandum at 14-15.

In assessing an inmate's claims that prison officials subjected him to cruel and unusual punishment by using excessive force, courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). An inmate plaintiff claiming that prison officials subjected him to cruel and unusual punishment by use of excessive force must establish both an objective and subjective component of the claim. *Romano v. Howarth*, 998 F.2d 101, 105 (2d cir. 1993).

Objectively, a § 1983 plaintiff must establish that the alleged deprivation is sufficiently serious or harmful to reach constitutional dimensions. *Romano*, 998 F.S2d at 104, *see also Wilson v. Seiter*, 501 U.S. 294, 296 (1991). This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8. Thus, while a *de minimis* use of force will rarely suffice to state a constitutional

claim, a plaintiff is not required to show that the application of force resulted in any serious injury. *Id*. at 9-10; *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The subjective component of an Eighth Amendment excessive force claim requires that the defendants act maliciously and with the intent to harm the inmate plaintiff. *Hudson*, 503 U.S. at 7; *Romano*, 998 F.2d at 105.

In the instant case, the record is devoid of any statement from Plaintiff denying the Unusual Incident Report's description of the July 5, 2002 use of force as necessary to gain physical control of Plaintiff after Plaintiff commenced a physical assault on the corrections officers involved in moving Plaintiff to a new cell. In particular, Plaintiff does not deny that after wrist restraints were applied to Plaintiff in preparation for escorting Plaintiff to his new cell, Plaintiff head-butted Defendant Weed in the left eye, as a result of which Defendant Worle placed Plaintiff in a body hold and guided Plaintiff back into the cell, where Plaintiff kicked Defendant Weed in the left knee, elbowed Worle in the forehead, and kicked Casselberry in the groin. Unusual Incident Report. Nor does Plaintiff deny that Defendants Weed and Augustine struck Plaintiff on the right shoulder and left knee with batons "to gain control of violently struggling" Plaintiff, and that Defendants Weed and Casselberry had to use body holds to place Plaintiff on the bed to allow Augustine to apply a waist chain and leg irons before escorting Plaintiff to his new cell. *Id*. Plaintiff also denies being assaulted or hit after being placed in restraints. Porter Deposition T. at 31-32.

In sum, Plaintiff does not dispute that he instigated the July 5, 2002 use of force

altercation, or that Defendants' use of force did not exceed that necessary to subdue Plaintiff. Plaintiff is thus unable to establish the objective component of his excessive force claim, *i.e.*, that the force used against him was other than "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8. As such, no reasonable jury could find that Defendants Augustine, Casselberry, Weed or Worle acted other than "in a good-faith effort to maintain or restore prison discipline," rather than "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Defendants' motion is therefore GRANTED with regard to Plaintiff's Eighth Amendment excessive force claim.

### B. Denial of Medical Care

Plaintiff claims Defendants McGinnis, Waite, Hazelton, Moriarty, Schumaker, and Nurse Dyal denied him proper medical care for injuries sustained in the July 5, 2002 incident, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Amended Complaint ¶ 6. Plaintiff, however, fails to allege that McGinnis, Waite, Hazelton, Moriarty, and Schumaker were personally involved in the treatment of Plaintiff's injuries and, thus, the failure to treat claim does not survive summary judgment as against those Defendants. *Richardson*, 347 F.3d at 435 (requiring personal involvement in alleged constitutional violation to establish liability under § 1983). Although it is undisputed that Nurse Dyal provided Plaintiff with medical care following the July 5, 2002 incident, Plaintiff maintains that such treatment was inadequate for his head wound from which Plaintiff alleges he was "bleeding profusely." Amended Complaint ¶ 6.

Inadequate medical care violates the Eighth Amendment's proscription against cruel and unusual punishment when a defendant acts with "deliberate indifference to [a] prisoner's] serious medical needs." *Harrison v. Barkley*, 219 F.32d 132, 136 (2d Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The test for "deliberate indifference" requires a § 1983 plaintiff demonstrate both that (1) he "is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the defendant officials possessed sufficient culpable intent." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). Further, culpable intent requires the inmate to establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id*. (citing *Farmer*, 511 U.S. at 834-35). However, an Eighth Amendment claim for denial of medical care does not require that the plaintiff actually experience serious physical injury as a result of that denial. *See Harrison*, 219 F.3d 136-37 (holding defendants' alleged refusal to treat inmate's tooth cavity would constitute deliberate indifference to serious medical need under Eighth Amendment, even though inmate did not ultimately suffer serious physical harm, provided defendants knew of and disregarded risk to inmate's serious medical needs).

In the instant case, the evidence establishes the only injuries Plaintiff sustained during the July 5, 2002 incident were a small, dime-sized bump on the top of his head, a quarter-inch laceration on his lower lip, and a one-inch laceration on the back of his

neck.  Use of Force Report at 1-2; Ambulatory Health Record.  Upon examining Plaintiff, Nurse Dyal reported Plaintiff complained only of a bump on his head.  All areas were cleaned and Plaintiff was advised to keep the wounds clean and dry. *Id*.  Plaintiff was not taken to the hospital for further treatment.  Unusual Incident Report at 1-2.

The record is devoid of any evidence establishing that Plaintiff's injuries sustained on July 5, 2002 constituted a serious medical condition for which the denial of adequate treatment "could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance*, 143 F.3d at  702.  In fact, Plaintiff does not even allege, either in the Amended Complaint or in his deposition testimony, suffering any further significant injury or pain based on any delayed or denied treatment, nor does Plaintiff allege that as a result of the inadequate treatment, his injuries did not heal, or that their healing was delayed.  Nor does Plaintiff challenge the accuracy of the Use of Force Report and portions of his Ambulatory Health Record submitted by Defendants in support of summary judgment on this claim.  Because Plaintiff cannot establish that any denial of medical care caused him to be "incarcerated under conditions posing a substantial risk of serious harm," the court need not consider whether "the defendant officials possessed sufficient culpable intent" with regard to such incarceration. *Hayes*, 84 F.3d at 620.  However, the court finds that Plaintiff provides nothing to support that Defendants McGinnis, Waite, Hazelton, Moriarty, Schumaker, or Dyal were aware that Plaintiff was in any discomfort or pain and failed to provide necessary treatment.

On this record, summary judgment should be GRANTED in Defendants' favor on Plaintiff's Eighth Amendment denial of proper medical treatment claim.

## C.      Failure to Protect

Plaintiff alleges Defendants McGinnis, Waite, Hazelton, Moriarty and Schumaker failed to protect Plaintiff from the July 5, 2002 assault.  Amended Complaint ¶ 6.  In the context of an alleged Eighth Amendment failure to protect claim, "mere negligence will not give rise to a constitutional violation." *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986 )).  Rather, "[a] plaintiff must demonstrate that defendants acted with deliberate indifference with respect to his safety or with an intent to cause harm to him; though a showing of an express intent to inflict unnecessary pain is not required to state a constitutional cause of action." *Id*.

In the instant case, not only is the record devoid of any evidence of personal involvement by Defendants McGinnins, Waite, Hazelon, Moriarty, and Schumaker in the July 5, 2002 incident, but, as discussed above, the record establishes that the Defendants who were personally involved in the July 5, 2002 incident, including Augustine, Casselberry, Weed, and Worle, did not use excessive force or in any way violate Plaintiff's constitutional rights.  Discussion, *supra*, at 21-23.

Prisoners' rights under the Eighth Amendment have been construed as including freedom from the "unnecessary and wanton infliction of pain" at the hands of prison officials.  *Romano*, 998 F.2d at 104 (quoting *Estelle*, 429 U.S. at 104).  Absent some finding that a Defendant DOCS employee violated some constitutional right of Plaintiff with regard to the July 5, 2002 use of force, however, no Defendant supervisory official can be held liable for failure to train or to protect Plaintiff from such use of force.  *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) (dismissing failure to protect, train and supervise claims against supervisory defendants because such claims

under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised . . ..").

Accordingly, Defendants' motion is GRANTED as to Plaintiff's Eighth Amendment failure to protect claim.


**6.      Qualified Immunity**

Because the court is granting summary judgment on the merits of Plaintiff's claims, the court does not consider whether Defendants are qualifiedly immune from liability on such claims.


<u>**CONCLUSION**</u>

Based on the foregoing, Defendants' motion (Doc. No. 148) is GRANTED.  The Clerk of the Court is directed to enter judgment in accordance with this Decision and Order and to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July <u>22</u>, 2009
             Buffalo, New York


**Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in accordance with Fed.R.App. 4(a)(1)(A) and (c).**